UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STONEY GLENN,

    Plaintiff,

v.                                             Case No. 3:19cv4890-LC-HTC

CAPTAIN SMITH,
NURSE YABOURGH,
NURSE JORDEN,
DOCTOR HAIDER,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Stoney Glenn, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a complaint under 42 U.S.C. § 1983. ECF Doc. 1. The Court screened the complaint and determined that it included a misjoinder of claims and parties and failed to state a claim for relief against the Defendants. Because Plaintiff is proceeding *pro se*, the Court entered an order allowing Plaintiff an opportunity to amend the complaint. ECF Doc. 14. Plaintiff filed an amended complaint and, upon screening, the undersigned respectfully recommends this action be dismissed without additional opportunity to amend. Despite being provided an opportunity to do so, Plaintiff has not cured the deficiencies identified in his initial complaint. Namely, Plaintiff continues to attempt to join wholly unrelated claims arising out of

separate and distinct incidents, with no logical relationship, and arising out of different institutions.

## I. BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at the Reception and Medical Center ("RMC").[1] ECF Docs. 16, 17. Plaintiff sues Captain Smith, a current or former employee of Century Correctional Institution ("Century CI"), as well as three (3) current or former employees of RMC: Doctor Haider, Nurse Jorden, and Nurse Yabourgh (sometimes identified by Plaintiff as "Yabough"). Doc. 17 at 3. The amended complaint sets forth the factual allegations which follow.

### A. Plaintiff's Claims Arising Out Of His Incarceration At Century CI

While housed at Century CI, Captain Smith sprayed Plaintiff "with chemical agent for no reason." ECF Doc. 17 at 7. Before Smith sprayed him, Plaintiff claims another officer asked Smith why he planned to spray Plaintiff if Plaintiff was "not doing anything wrong" and also that Smith "was told" before the fact about Plaintiff's asthma and allergies to chemicals. *Id.* at 13. Additionally, the "cell extraction team . . . determined" Plaintiff "did not need to be removed" or taken off his bunk and told to "cuff up." *Id.* Nevertheless, Smith still chose to spray Plaintiff.

---

[1] When Plaintiff initiated this action, he was incarcerated at Santa Rosa Correctional Institute.

After being sprayed, the nurse gave Glenn treatment on multiple occasions, Glenn's "feet, legs and stomach" swelled "bad," and the doctor put Plaintiff into the infirmary and "started treatment." *Id.* Plaintiff alleges the spray caused "as[th]ma[] attacks," an "[al]lergic reaction that caused kidney failure," and "a stroke that ha[s] permanently damaged [Plaintiff]." *Id.* at 7, 13. Eventually, Glenn was transferred to "Lake Butler for treatment." *Id.* at 13. Glenn states that "the inspector general" told him an investigation into the incident terminated "in [his] favor." *Id.*

Plaintiff claims Smith's actions violated "Rule of Chapter 33, Law of Due Process" and were negligent. *Id.* at 7. As relief, Plaintiff seeks $15,000.

### B. Plaintiff's Claims Arising Out Of His Incarceration At RMC/Lake Butler

1. <u>Urinary issues</u>

In 2016, while Plaintiff was "housed at the infirmary at Lake Butler," Yabourgh and Jorden unsuccessfully tried to insert a catheter into Plaintiff's penis, causing "trauma, lots of pain and bleeding." ECF Doc. 17 at 5. As a result, Defendants prescribed an x-ray for Plaintiff. When Plaintiff "returned to the infirmary both nurses continued to try twisting and turning with lots of pressure to get the tube to go in place." *Id.* Eventually, the nurses pulled the tube out and called Doctor Ortiz to evaluate Plaintiff. Doctor Ortiz told Defendants to give Plaintiff pain medicine and take him to urgent care so that a doctor could send him to the hospital. At the "hospital in Jacksonville," it was determined that Plaintiff

needed surgery before the catheter could be utilized, so Plaintiff received surgery. *Id.* at 5-6.

Plaintiff claims that Yabourgh and Jorden's "performance was malpractice," he still has "problems with [his] bladder," and he has "suffered lots of pain and trauma." *Id.* at 15. As relief, Plaintiff seeks three (3) billion dollars. *Id.* at 17.

### 2. Kidney issues

Plaintiff alleges Doctor Haider "could not find a cure for [his] kidney issue so he convinced [him] that chemotherapy" would be helpful and prescribed it to him in both 2016 and 2019. *Id.* at 6, 8. Glenn had multiple negative reactions to the chemotherapy, including almost dying from it, brain damage, and seizures. *Id.* Plaintiff still has "the kidney issue," and an unspecified person determined that chemotherapy "will not help." *Id.* at 8 (apparently, the determination was made at "Jacksonville Hospital"). As relief for his "permanent damage," Plaintiff seeks three (3) billion dollars for the "malpractice."[2] *Id.* at 17.

## II.   STANDARD OF REVIEW UNDER 28 U.S.C. §§ 1915A AND 1915(e)

Because Plaintiff is a prisoner and is also proceeding *in forma pauperis*, the Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious,

---

[2] Although Plaintiff seeks $3,000,000,000 for "malpractice," it is unclear whether he seeks that amount from all three (3) medical defendants. ECF Doc. 17 at 17.

or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The Court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the Plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Additionally, the Court is to construe a *pro se* litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

Plaintiff was previously directed that he cannot combine unrelated claims into one complaint. Plaintiff, however, continues to do so in his amended complaint. He has joined what appears to be an excessive force claim against Defendant Smith, relating to events occurring at Century CI, with claims against Defendants Yabourgh and Jorden, related to the placement of a catheter while he was at RMC, with claims against Defendant Haider relating to chemotherapy treatments he received at RMC.

Under Federal Rule of Civil Procedure 20(a), "a complaint against multiple defendants must allege claims that arise 'out of the same transaction, occurrence, or

series of transactions or occurrences' and that involve a 'question of law or fact common to all defendants.'" *Smith v. Warden, Hardee Corr. Inst.*, 597 F. App'x 1027, 1030 (11th Cir. 2015), citing Fed. R. Civ. P. 20(a). Indeed, the complaint form used by the Plaintiff specifically states that "**[f]acts not related to this same incident or issue must be addressed in a separate civil rights complaint.**" ECF Doc. 17 at 5 (emphasis in original).

To determine whether claims arise from the same transaction or occurrence, or series of transactions or occurrences, courts in the Eleventh Circuit apply the "logical relationship" test. *See Smith v. Trans–Siberian Orchestra*, 728 F.Supp.2d 1315, 1319 (M.D. Fla. 2010), citing *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.*, citing *Republic Health*, 755 F.2d at 1455. In other words, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health*, 755 F.2d at 1455, quoting *Plant v. Blazer Fin. Servs.*, Inc., 598 F.2d 1357, 1361 (5th Cir. 1979).

Plaintiff's claims do not arise out of the same transaction or occurrence. Plaintiff's claims do not arise from the same operative facts. The alleged facts supporting Plaintiff's claims against Smith include: (1) Smith spraying Plaintiff with

chemical agents while he was at Century CI; (2) another agent asking Smith why he was going to spray Plaintiff if Plaintiff was "not doing anything wrong"; (3) the cell extraction team's determination that Plaintiff "did not need to get off [his] bunk and cuff up"; and (4) asthma attacks and an allergic reaction to the alleged attack. ECF Doc. 17 at 7, 13.

The alleged facts supporting Plaintiff's claims against Yabourgh and Jorden are: (1) a failed attempt to insert a catheter while Plaintiff was at RMC; (2) "lots of pain and bleeding" in Plaintiff's penis causing him to have to go to the hospital and eventually receive a surgery; (3) a determination that the catheter "would have never worked without surgery"; and (4) ongoing "problems with [his] bladder." *Id.* at 5, 6, 15.  Finally, the facts supporting Plaintiff's claims against Haider are: (1) an ongoing kidney issue; (2) Haider "convinc[ing]" Plaintiff to do chemotherapy in 2016 and 2019; (3) Plaintiff's negative reactions to the chemotherapy, including nearly dying, multiple seizures, and brain damage; and (4) the determination that chemotherapy will not help Plaintiff's kidney problems. *Id.* at 6, 8.

These claims clearly arise out of separate incidents, involve different people, occurred at different places and times, and are premised on entirely different sets of facts.  These claims do not pass the "logical relationship" test.  This would be true even if, reading Plaintiff's complaint liberally, it is his position that the chemical agents somehow caused his kidney failure, which resulted in his needing a catheter

and chemotherapy. *See* ECF Doc. 17 at 7; *Hughes v. Sears. Roebuck & Co.*, No. 2:09–CV–93, 2009 WL 2877424, at *5 (N.D. W. Va. Sept. 3, 2009) (finding joinder of product liability claim and medical malpractice claim improper where plaintiff fell from an allegedly malfunctioning treadmill purchased from Sears and then doctor allegedly misdiagnosed her injuries); *Johnson v. City of Fayetteville*, 2015 WL 3409058, at * 2 (E.D. NC May 27, 2015) (finding no logical relationship between claims arising out of motor vehicle collision and subsequent arrest). Simply, Plaintiff cannot join these claims into one action.

In the Court's prior order, the Court specifically told Plaintiff that he "must bring these claims in separate actions, unless he can show that they arise out of the same transaction or occurrence." ECF Doc. 14 at 6. The Court could not have made that point clearer and yet Plaintiff chose to file an amended complaint that continues to include all of these claims. Therefore, the undersigned finds that allowing Plaintiff yet another opportunity to amend his complaint, which would further delay service of the complaint, would be inefficient and futile. *See Skillern v. Georgia Dept. of Corrections Com'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (affirming dismissal of *pro se* prisoner complaint for failure to correct Rule 20 deficiencies after being directed to do so by magistrate judge); *Smith v. Warden, Hardee Corr. Inst.*, 597 F. App'x 1027, 1030 (11th Cir. 2015) (holding district court did not abuse its

discretion in dismissing a prisoner's complaint for failure to comply with Rule 20(a), where the complaint alleged three unrelated claims against different officials).

Accordingly, it is respectfully RECOMMENDED that:

1.   Plaintiff's claims be DISMISSED without prejudice under Federal Rule of Civil Procedure 20(a), 28 U.S.C. § 1915A(b)(1), and 28 U.S.C. § 1915(e)(2)(B)(ii) for improper joinder and failure to comply with an order of this Court.

2.   The clerk be directed to close this case.

At Pensacola, Florida, this 16th day of April, 2020.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.